IN THE MATTER OF THE ADVISORY COMMITTEE ON PROFES-
SIONAL ETHICS OPINION NO. 447, HOWARD D. SOBEN, AND
THE NEW JERSEY ASSOCIATION OF ATTORNEY-CERTI-
FIED PUBLIC ACCOUNTANTS, INC., APPELLANTS.

Argued May 5, 1981—Decided July 2, 1981.

*Jeffrey W. Lorell* argued the cause for appellants (*Clapp & Eisenberg*, attorneys).

*Colette A. Coolbaugh*, Secretary, argued the cause for respondent Advisory Committee on Professional Ethics (*Colette A. Coolbaugh*, attorney; *Charles J. Hollenbeck*, staff attorney, on the brief).

PER CURIAM.

Petitioner seeks review of a decision of the Advisory Committee on Professional Ethics, which decision states that an attorney at law of this State, who is also licensed as a Certified Public Accountant, cannot disclose that licensure by placing the initials "CPA" on the leterhead of his law firm.

I

On July 10, 1979, Merit B. Gavin, an attorney and a certified public accountant, requested an opinion from the Advisory Committee on Professional Ethics. The issue submitted was: "With regard to an attorney's letterhead, is the use of the designation 'CPA' after an attorney's name permissible?" The Committee responded with *N.J. Advisory Comm. on Professional Ethics, No. 447*, 105 *N.J.L.J.* 119 (February 7, 1980) (hereinafter "*Opinion No. 447*"), determining that such a disclosure or communication was impermissible. Because that opinion was based in part on a superseded ethics opinion from New York, Mr. Gavin requested

that the Committee review its decision. The Committee subsequently reaffirmed its decision. 106 *N.J.L.J.* 69 (July 24, 1980).

On August 16, 1980, Howard D. Soben, also an attorney and a certified public accountant, filed a petition requesting that this Court review the validity of *Opinion No. 447.* We allowed the New Jersey Association of Attorney-Certified Public Accountants, Inc. leave to intervene, and granted the petition.

## II

We must initially determine whether placing the designation "CPA" on an attorney's letterhead is consistent with our Code of Professional Ethics.

■ Disciplinary Rule 2–102(D) reads as follows:

A lawyer who is engaged in the practice of law and another profession or business shall not so indicate on his letterhead, office sign, or professional card, nor shall he identify himself as a lawyer in any publication in connection with his other profession or business.

This disciplinary rule is concise and unambiguous and compels the conclusion that the suggested conduct is violative of its clear wording. The inclusion upon the letterhead of an attorney at law of the designation "CPA" or other expression of licensure as a Certified Public Accountant is unquestionably the indication of "another profession" in addition to that of a practicing lawyer. Its use is contrary to the direct and simple command of this disciplinary rule.

■ Petitioners further contend that *DR* 2–102(E), which serves as an exception to *DR* 2–102(D), would permit the letterhead designation they seek. *DR* 2–102(E) states:

Nothing contained herein shall prohibit a lawyer from using or permitting the use of, in connection with his name, an earned degree or title derived therefrom indicating his training in the law.

Again, the clear and unambiguous words of the disciplinary rule foil the petitioners. A CPA designation, to the extent it reflects an earned degree or title derived from a degree, does not implicate or relate to training in the law. That petitioners' proposed practice is not encompassed within the breadth of this exception is obvious.

## III

Given this evident interpretation and application of the operative disciplinary rules, we must address petitioners' contention that these Code provisions unconstitutionally infringe upon their First Amendment rights.

Petitioners principally rely upon *Bates v. State Bar of Arizona*, 433 *U.S.* 350, 97 *S.Ct.* 2691, 53 *L.Ed.2d* 810 (1977). A sharply divided Court there extended protections of commercial speech under the First Amendment to the legal profession and invalidated regulations that had prohibited price advertisement in various media for routine legal services. The constitutional issue in *Bates* concerned "only whether [a] State may prevent the publication in a newspaper of appellants' truthful advertisement concerning the availability and terms of routine legal services." 433 *U.S.* at 384, 97 *S.Ct.* at 2709, 53 *L.Ed.2d* at 836. The Court "rule[d] simply that the flow of such information may not be restrained," *id.*, observing that advertisement generally serves individual and societal interests in assuring informed and reliable decision-making and that those interests should not be thwarted by antiquated notions of professionalism. In effect, the Supreme Court overruled an anachronistic ban on advertisement by attorneys, a ban which had amounted to the blanket suppression of meaningful and reasonable communications in the public interest.

Nonetheless, although the United States Supreme Court has allowed and appropriately encouraged advertisement by attorneys with respect to routine legal services, it has clearly held that such commercial communication may be subject to reasonably regulatory restraint on its time, place and manner. *Id.* In particular, it is well settled that "there can be no constitutional objection to the suppression of commercial messages . . . more likely to deceive the public than inform it." *Central Hudson Gas v. Public Service Comm'n*, 447 *U.S.* 557, 100 *S.Ct.* 2343, 65 *L.Ed.2d* 341 (1980). Especially because the public lacks sophisti-

cation concerning legal services, advertising that is susceptible of being deceptive or misleading is particularly subject to ethical restraint. *Bates, supra,* 433 *U.S.* at 383–384, 97 *S.Ct.* at 2708–2709, 53 *L.Ed.2d* at 835–836. This need for regulation is heightened, for example, where the subject matter of the advertisement is not routine in nature but involves the quality of legal services which cannot easily be measured or verified. *Id.*

In our own jurisdiction we have also emphasized the judicial power and need to impose upon all attorneys, as officers of the court, the highest standards for ethical conduct. Accordingly, we have scrupulously endeavored to protect against even the slightest propensity that the public will be deceived or misled. See *In re Education Law Center, Inc.,* 86 *N.J.* 124 (1981); *In re LiVolsi,* 85 *N.J.* 576 (1981); *In re Wilson,* 81 *N.J.* 451 (1979). Additionally, we have recognized the important distinctions between general advertising of legal services as to type and cost, and advertising which purports to signify particular legal qualities, areas of specialization or levels of competence. The evaluation of attorney competence or qualifications is particularly sensitive and controversial and in need of regulation and supervision. *E.g., R.* 1:39.

The United States Supreme Court has not adopted a different view on these matters. Thus, the Court in *Ohralik v. Ohio State Bar Association,* 436 *U.S.* 447, 98 *S.Ct.* 1912, 56 *L.Ed.2d* 444 (1978), reh. den. 439 *U.S.* 883, 99 *S.Ct.* 226, 58 *L.Ed.2d* 198 (1978), approved the discipline of an attorney for personal solicitation of clients which was misleading in nature, and in *Friedman v. Rogers,* 440 *U.S.* 1, 99 *S.Ct.* 887, 59 *L.Ed.2d* 100 (1979) reh. den. 441 *U.S.* 917, 99 *S.Ct.* 2018, 60 *L.Ed.2d* 389 (1979), the Court approved of a regulation which prohibited the use of a trade name because of its misleading tendencies.

*Friedman* illustrates the problems that may arise from attorney advertising in the area of professional competence. The Supreme Court in *Friedman* reasoned that:

> Because these ill-defined associations of trade names with price and *quality information* can be manipulated by the users of trade names, there is a

significant possibility that trade names will be used to mislead the public. [440 *U.S.* at 12–13, 99 *S.Ct.* at 895–896, 59 *L.Ed.2d* at 111–112 (emphasis added).]

The Court went on to stress that even if the particular use of advertising "were not in fact misleading," it may be regulated if it represents an example of a procedure "which enhances the opportunity for misleading practices." *Id.* at 15, 99 *S.Ct.* at 897, 59 *L.Ed.2d* at 113.

The practice of including extra-legal qualifications on a law firm letterhead creates a potential for misperception similar to that considered in *Friedman.* Although the designation in any given case as to an extra-legal qualification may be accurate standing alone, its juxtaposition on an attorney's letterhead denotes special qualifications or competence suggesting an enhanced professional capacity to practice law which may or may not be true. Non-legal training is not directly transferable to legal ability or prowess. Thus, the inclusion of extra-legal qualifications on a letterhead creates a possibility of confusion that is sufficient to sustain the constitutionality of restrictions on the place and manner of the communication.

In concluding that the stricture against designating extra-legal qualifications on the letterhead of an attorney now contained in *DR* 2–102(D) is not violative of First Amendment rights, it is important to emphasize that neither this disciplinary rule nor the decision of the Advisory Committee on Professional Conduct prohibits outright the communication by attorneys of this kind of educational background or training. Although not easily measured and subject to manipulation, such extra-legal accomplishments may be indicative of substantial ability and talent, and, therefore, can be considered a proper subject for advertisement. The modes and standards for such advertising are not before us but would necessarily be responsive to the guidelines articulated by the United States Supreme Court. *E.g., Bates, supra.*

The disciplinary rule in question, however, does not deal with advertising of routine legal services generally or other forms of advertisements which might suitably indicate extra-le-

gal training or accounting in particular. The disciplinary rule contemplates that, in the practice of law, attorneys normally, if not uniformly, utilize "official" letterheads, office signs and professional cards which are not regarded as primary vehicles for advertising professional services or qualifications but serve to identify the individual as an attorney. They are, in this sense, informational and designed to impart solely the official status of the attorney as one licensed and authorized to engage in the practice of law. The disciplinary rule merely prevents an attorney from indicating extra-legal training on a law firm letterhead. It does not purport to close other avenues for the advertisement of such accomplishments. See *N.J. Advisory Comm. on Professional Ethics, Opinion No. 468,* 107 *N.J.L.J.* 10 (January 1, 1981).[1]

For these reasons, we deny the relief requested in the petition.

*For affirmance*—Chief Justice WILENTZ, and Justices SULLIVAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK —6.

*For reversal*—None.

---

[1] We note, as advised by the respondent, that at least nine jurisdictions and the national American Bar Association have deleted their disciplinary code provisions which are similar to our *DR* 2–102(D). Other states, including Delaware, Pennsylvania and Connecticut, apparently retain such a provision.